DAVID BAYARSKY, ASSIGNEE OF REBECCA FELD, PLAIN-TIFF-RESPONDENT, v. JOSEPH FELD & COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPEL-LANT.

Submitted October 4, 1938—Decided March 8, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the defendant-appellant, *William R. Vanecek* and *Eugene F. Frey.*

For the plaintiff-respondent, *Weinberger & Weinberger* (*Joseph J. Weinberger*).

BODINE, J. The defendant appeals from a judgment directed in favor of the plaintiff, an assignee of Rebecca Feld, a sick and elderly woman. Joseph Feld, her husband, died intestate April 29th, 1935. He was the principal stockholder of Joseph Feld & Company, a corporation, operating a slaughter house in South Hackensack, and a retail meat establishment on Monroe street, Passaic. Feld was survived by his widow and their six children. Differences arising as to the distribution and management of his estate, a comprehensive agreement was executed by the widow and the six children. All had competent legal advice and the provisions of the agreement are clear and unmistakable.

The parties of the first part to the agreement were the widow, two daughters and a son, Samuel, a member of the bar of this state. The parties of the second part were the remaining three sons, who had been minority stockholders in the company during their father's lifetime. They proposed to organize a new corporation to be known as Feld Bros., Inc., to carry on the business lately conducted by the defendant company. The old company was to lease all its property to the new company for the period of ten years.

The agreement provided who should be the officers and directors of the old company. The stock in the old company was to be distributed so that the parties of the first part and the parties of the second part collectively should have an equal number of shares. The rent amounting to $85 a week to be paid by the new company to the old company was to be paid by the latter company to Rebecca Feld, the plaintiff's assignor, during her lifetime and thereafter was to be reduced to the sum of $60 per week, which sum was to be paid in accordance with the directions of the daughters and the son Samuel.

Many other details followed, which need not now be mentioned. However, they indicate the care with which every detail of the plan for distribution was considered by the parties to the agreement. Appropriate and formal corporate action was thereafter effected, to the end that the widow should receive $85 a week from the old company, *the same being the rent paid under the lease* to the new company.

Pursuant to the agreement, the sum of $5,270 was received by the widow during the period from November 1st, 1935, to September 24th, 1937. There was a balance due at the time of suit amounting to $3,060, for which the plaintiff had judgment. In fact, the $85 a week was regularly paid for a long time after the execution of the agreement, so in addition to the clarity of the agreement, we have the benefit of contemporary construction.

The contention that the widow subsequently agreed to take less has no consideration or credible evidence to support it. That two of the sons, stockholders in Feld Bros., Inc., but also directors of Joseph Feld & Company, strove by bogus action of that company to change the terms of their own lease, is indicative of their bad faith and consummate desire to relieve themselves of the obligations gladly assumed when they went into the family settlement agreement and secured control of the assets of the estate.

The widow having a valid obligation of the defendant company calling for the payment of $85 a week, the rent received from the new company, could not be deprived thereof except by her own action. She never took any such action. The debtor cannot change the form of his obligation by his own desires, nor can two directors of a corporation take secret personal advantage so as to alter their own obligation. The new company was obligated to pay rent under its contract to the old company. By writing, supported by consideration moving from and to each of the signatories to the family settlement agreement, that rent was to be paid by the old company to the widow. The amicable settlement of the estate and the provisions for the management of the existing business supported the obligation of the old company to make

payment of $85 a week, the same being the rent reserved under the lease, to the widow for life. Corporate action looking to the accomplishment of such result was immediately taken by the board of directors at a meeting at which all directors were present.

The argument seems to be made that the resolution of the old company calling for the payment to the widow was not precisely in accordance with the terms of the family settlement, in that all four of the parties of the first part therein mentioned were named in the resolution. The point is without merit since the payments were made in accordance with the agreement. The variation was immaterial and does not go to the merits. Stripped of all verbiage the situation is, that this family was divided into two factions. One faction has the use of the family property for which it agreed to pay $85 a week, which was to be paid to the widow for life. It wanted to avoid that payment by changing the terms of its obligation. If the new company fails to pay the rent reserved, no action by the old company is possible, because of the equal division of the factions in the board of directors. Therefore, it is manifest that at the time of the settlement and at the time of the adoption of the resoluion by the old company calling for the payment of $85 a week to the widow, it was intended that she should secure that sum from the old company at all events. Only by such an obligation could she have any security or any ability to enforce performance of the lessee's obligation to pay rent.

Assertions that there was an intention that the rent reserved should be reduced, when need occurred, is not relevant. Written obligations cannot be so varied. Had the plaintiff's assignor not held the obligation of the old company, the lessee could, with impunity, fail to perform its obligation and the beneficiaries of the settlement would be stripped of any return for the use of the property settled and powerless to assert any claim thereto.

We have carefully examined all the other arguments contained in the appellant's brief and find them without merit.

The judgment is affirmed, with costs.